Good morning and may it please the court. Charged with possessing a gun, Oscar Rash proceeded to trial and he testified and he told his own jury that he possessed a gun and he believed other aspects of Mr. Rash's testimony to have been false, applied the two-level increase under Section 3C1.1 for obstruction of justice. Rash now contends that that was erroneous and he asked this court to vacate his sentence so that that error can be fixed. The starting point of this morning's analysis can be found in this court's opinion in a case called Arambula, where it was noted that not all instances of a defendant's false testimony constitute obstruction of justice. That's because the Supreme Court, in a case called Dunnigan, has said that false testimony obstructs justice under the sentencing guidelines only when it satisfies all the elements necessary to prove a perjury. And proof of a perjury, as we all know, requires a finding of materiality. i.e. that the false testimony was capable of influencing the outcome. It's Oscar Rash's position that any false testimony that he gave wasn't capable of influencing the outcome. That requires that we somewhat follow the bouncing ball dating back to the trial, which in this case occurred way back in 2008. Rash was accused of possessing a gun on a date certain. The government's direct evidence of that possession was compelling. They presented a police officer who said, I saw Rash walking down the street. I watched as Rash withdrew a gun, dropped it to the ground, walked away. We apprehended Rash and we scooped up the gun. The jury heard Rash's post-arrest statement in which Rash basically said, I was walking down the street, I saw law enforcement, I dropped the gun, and I tried to walk away. That was compelling evidence, and then of course it was compounded by Rash's decision to testify in his own defense, and testifying on his own behalf on both direct examination and cross-examination, Rash remained unequivocal. There was a gun in my apartment, I needed to return it to my girlfriend, I grabbed it, I knew I couldn't have one, I put it in my pants, I walked down the street, I saw police officers, I dropped it to the ground, and I tried to walk away. That was the government's proof of Oscar Rash's possession of a gun on the date alleged. The government, as was its right, decided to prove its case by broader evidence. During the government's case in chief, it introduced evidence of Rash's involvement or participation in the gun's purchase and its acquisition some days earlier. To that, and this is what caused Judge Clavert concern, Rash, primarily on cross-examination, quibbled with the prosecutor about the depth of his involvement and his participation. Judge Clavert essentially viewed this as a scenario where Rash was trying to sort of cast himself as a bystander to the transaction, whereas Judge Clavert saw the evidence as indicating that Rash's involvement was more hands-on, direct, and he maybe even controlled the transaction. Be that as it may, that proof was unnecessary. It was peripheral to the extent that the jury had believed and credited Rash's testimony about sort of passive presence during the gun's acquisition. It was still the jury's charge was to decide whether the government had met its burden of proving that Rash possessed the gun on the date charged. To that, no one's ever suggested that Rash was less than truthful in saying that he armed himself, he walked down a city street, and when he saw the police, he threw it on the ground. He stuck to that story all along. Put simply, to the extent that he may have minimized the earlier involvement in the gun's acquisition, that was peripheral. It wasn't material because it wasn't capable of influencing what the unequivocal evidence was of his possession of the gun on a date certain. In 2009, when Judge Clavert originally sentenced Mr. Rash, he made the finding, at least implicitly, that the testimony about Rash's involvement in the gun's purchase and acquisition was false. He never made any reference to materiality, and it wasn't really the subject of much dispute because at that time in 2009, Rash was an armed career criminal subject to a 15-year minimum sentence that trumped any application of 3C1.1. It was only fast-forwarding to earlier this year, after Rash had undone his ACC sentence under the Supreme Court's decision in Johnson, that obstruction became in meaningful play. There, when Rash suggested the immateriality of his testimony, Judge Clavert, for the first time, addressed materiality. Initially, his question of defense counsel was, counsel, are you trying to say that a defendant can testify untruthfully and not obstruct justice? The answer defense counsel gave is the answer the Supreme Court has provided in Dunnegan. Yes, this court has said so in Arambula. From there, Judge Clavert injected his definition of materiality, and it went something like this. Any time a witness testifies under oath before a finder of fact there to weigh the credibility of the evidence, that's material. But of course, that's all trial testimony, so that defies Arambula. Judge Clavert, at that point, I think the record depicts, had reached a firm conclusion that the enhancement applies. He asked defense counsel anything else. Defense counsel said no. Without inquiry of the government, the prosecutor then had something to say about obstruction. Shifting gears, the government attempted to take the focus off the peripheral testimony about the gun's purchase and acquisition to focus intrinsically on Rash's possession of the gun on the date charged. And now the government was saying that Rash was sanitizing his possession that night, and doing so, according to the government, with the hope of inducing jury nullification. Well, Judge Clavert never actually found that portion of the testimony false. But even if that testimony was false, it's my suggestion that that too is immaterial, because Seventh Circuit law is crystal clear that the reason for a felon's possession of a gun is not a defense. The extent and nature of a defendant's possession of a gun is not a defense to the charge. And again, Rash at all times was unequivocally acknowledging that he armed himself, he walked down a street, and he tossed the gun to the ground when law enforcement came to his attention. On this issue of jury nullification, it creates an interesting academic question. Does a defendant obstruct justice if his testimony is intended to induce the jury to act unlawfully? Because the jury breaks its vow to follow the court's instructions in order to nullify. But setting that academic question aside, it begs another question. Was Oscar Rash trying to nullify his eventual jury way back on the night of his arrest when he told the same story? It just doesn't speak to some premeditated, calculated attempt at jury nullification. Quite frankly, an attempt at jury nullification suggests some degree of sophistication, and the broader record in this case, and I see I'm out of time, the broader record in this case indicates a defendant with considerable deficits rather than savvy and sophistication. So we do ask this court to vacate the sentence and remand the matter for resentencing. Thank you. Thank you, Mr. Stiller. Mr. Tableson? If you may please the court, Benjamin Tableson of the United States. Oscar Rash lied under oath about the nature and circumstances of his offense. And his lies were material because they could have affected his verdict and they could have affected his sentence. His counsel, at closing argument, said the jury could rely on two facts in order to acquit him. And both of those facts, the nature of the acquisition of the gun and whose gun it was, were exactly the things that Oscar Rash lied about on the stand. And the nature and circumstances of the offense are the very first factor a sentencing court is required to consider under 3553A. It is factor A1. So Rash's lies, attempting to minimize his culpability, could foreseeably have affected his verdict and sentence. For those reasons, they're material and perjurious, and that's exactly what the district court found. It found as much in 2009. It found as much again in 2016. But even if this court finds there was some infirmity in the district court's finding, it didn't sufficiently explicitly make materiality findings, First of all, the sentence should be affirmed because there are implicit materiality findings in the record. And second, any error was harmless because Rash's lies were, as I just described, material. The law as correctly applied to the facts as found below, which are not disputed here, would lead to the exact same obstruction enhancement, the exact same guidelines range, and so the same sentence. In its brief, in the appellant's brief, he makes reference to the Senn case as this positive here. Not so. The Senn case is easily distinguished because the Senn case was a conspiracy case. The defendant was charged and convicted of a conspiracy offense and was found by the court to have lied with regard to a substantive offense. And so those lies could not possibly have affected his conspiracy charge. Compare that instead to this court's case, Santoro, where a defendant was charged with, charged as a felon in possession of a firearm and lied about why he had the gun. He acknowledged, confessed really to the elements of the offense, but said he needed the gun for protection, and the court found in Santoro that that was a lie. And the court said that even though Santoro argues, quote, that because he admitted to the elements of the offense, any untruthful testimony relating to other matters is immaterial in that perjury, the court rejected that argument and said, although Santoro was unsuccessful in obtaining a jury instruction regarding the necessity for him to possess weapons, he clearly attempted to affect the outcome of the trial, and so his false statements clearly warrant an enhancement under Section 3C of 1.1. If the panel has no questions. Well, I do have a question about the jury nullification. Are you hanging your hat on jury nullification? Not exclusively, Your Honor. First of all, Mr. Rasch's lies could have affected his sentence. This court has said repeatedly that where a defendant even has been found guilty in lies at a sentencing hearing, for example, because that lie could affect the outcome of the case beyond the verdict, that is obstruction of justice, and that warrants the enhancement. Thank you very much. For those reasons, we ask the court to affirm the sentence below. Mr. Stiller? Regarding the government's reference to Santoro, whatever Santoro says is in tension with Sin. In Sin, this court said that when the defendant's testimony admits and acknowledges the elements of the offense, any prevarications are on the margins and not material and not obstructing justice. As to the capacity of any false testimony offered by Rasch to influence the verdict, again, the Seventh Circuit's instructions are clear. To possess something is to control it. So so long as the jury followed the instructions, Rasch's testimony, to the extent that it was false on the margins, couldn't have influenced that. And as to sentencing, he was subject to a 15-year mandatory minimum if convicted, regardless of whether he did or didn't testify, testified truthfully or untruthfully. So this wasn't a case where the sentence was subject to manipulation by false testimony at trial. Thank you. Thank you, Stiller. Thanks to both counsel. The case is taken under advisement, and the court will stand in recess.